IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.          _____

MIKELEEN REED,

      Plaintiff,

v.

DAVID R. POWELSON;
POWER WORLD, LLC;
B.W.L. HOLDINGS, LLC;
B.W.L. PARTNERSHIP, LLLP;
TRAIL RIDGE MARINA;
FIVESTAR MARINA, INC.;
FIVESTAR RENTALS;
GRAND LAKE MOTOR SPORTS;
PHLARE ORGANIZATION, LLC;
GEEZER CLUBS, LLC;
TRI-R LEASING, LLC;
TRI-R SYSTEMS CORPORATION;
TRI-R HOLDINGS, LLC;
COLORADO SPRINGS WASTE AND RECYCLING, LLC;
DATAGUARD USA, LLC;
ATTICUS, INC.;
TRM, LLC;

      Defendants.

_____

## COMPLAINT AND JURY DEMAND

_____

Plaintiff Mikeleen Reed, by and through her attorneys, Diane S. King and Laura E. Schwartz of King & Greisen, LLP, states her Complaint against the business entities ("Business Entity Defendants) and Defendant Powelson ("Powelson") in his individual capacity, (collectively "Defendants").

# I. <u>NATURE OF CLAIMS</u>

1. Plaintiff Mikeleen Reed ("Reed"), a former employee of Defendant Power World ("Power World"), brings this complaint for unlawful employment discrimination on the basis of her sex, female, and unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"). Reed also brings employment discrimination claims on the basis of her age under the Age Discrimination in Employment Act ("ADEA"), 29 U. S. C. § 621 *et seq*. and her sex plus her age in violation of both Title VII and the ADEA.

2. Reed also asserts pendant Colorado state law claims for negligent hiring, supervision and retention; intentional infliction of emotional distress; negligent infliction of emotional distress; intentional interference with contract and wrongful discharge in violation of public policy.

## II. <u>JURISDICTION AND VENUE</u>

3. The jurisdiction of this Court is invoked pursuant to Title VII, specifically § 2000e-5(f), as well as 28 U.S.C. §§ 1331, 1337, 1343, and 1345, among other sections. The jurisdiction of this Court is also invoked pursuant to the relevant provisions of the ADEA.

4. Venue is proper with this Court as some of the unlawful employment practices were committed within the jurisdiction of the United States District Court for the District of Colorado (including the state law claims) and also pursuant to 28 U.S.C. § 1391.

5. Reed timely filed her Charge of Discrimination with the Equal Opportunity Commission ("EEOC"). Although the EEOC is continuing to investigate Reed's Charge of Discrimination, she must now file her Complaint and Jury Demand to preserve her right to

pursue her state law claims.[1] Because Reed is desirous that the EEOC fully investigate her claims, she will be filing a Motion for Administrative Closure or, in the Alternative, a Motion to Stay the Proceedings, to give the EEOC adequate time for its review before moving forward with this litigation.

## III. THE PARTIES

6.      Plaintiff Reed is a female and a citizen of the United States who resides in Colorado and, during times relevant to this action, resided and worked in Colorado.

7.      At all relevant times, she was an employee of the Defendants and protected by the provisions of Title VII, the ADEA and the Colorado Anti-Discrimination Act.

8.      Defendant David Powelson was at all times relevant to this action the Principal of Power World and the other Business Entity Defendants. Defendant Powelson is a citizen of the United States who resides in Colorado and also conducts business in Colorado.

9.      Defendant  Power World LLC ("Power World") is a Limited Liability Company organized under the laws of the State of Colorado and which does business in Colorado.

10.      Defendant B.W.L. Holdings, LLC is a Limited Liability Company organized under the laws of the State of Colorado and which does business in Colorado.

11.      Defendant B.W.L. Partnership, LLLP is a Limited Liability Limited Partnership organized under the laws of the State of Colorado and which does business in Colorado.

12.      Defendant Trail Ridge Marina is a company doing business in Colorado.

13.      Defendant  FiveStar Marina, Inc., is a corporation organized under the laws of the State of Colorado and which does business in Colorado.

---

[1] The parties were unable to reach an agreement regarding a Tolling Agreement.

14.     Defendant FiveStar Rentals is a company doing business in Colorado.

15.     Defendant Grand Lake Motor Sports is a company doing business in Colorado.

16.     Defendant Phlare Organization, LLC is a Limited Liability Company organized under the laws of the State of Colorado and which does business in Colorado.

17.     Defendant Geezer Clubs, LLC Limited Liability Company is organized under the laws of the State of Colorado and which does business in Colorado.

18.     Defendant Tri-R Leasing, LLC is a Limited Liability Company organized under the laws of the State of Colorado and which does business in Colorado.

19.     Defendant Tri-R Systems Corporation is a corporation organized under the laws of the State of Colorado and which does business in Colorado.

20.     Defendant Tri-R Holdings, LLC is a Limited Liability Company organized under the laws of the State of Colorado and which does business in Colorado.

21.     Defendant Colorado Springs Waste and Recycling, LLC is a Limited Liability Company organized under the laws of the State of Colorado and which does business in Colorado.

22.     Defendant DataGuard USA, LLC is a Limited Liability Company organized under the laws of the State of Colorado and which does business in Colorado.

23.     Defendant ATTICUS, INC., is incorporated in the State of Colorado and which does business in Colorado.

24.     TRM, LLC is a Limited Liability Company organized under the laws of the State of Colorado and which does business in Colorado.

25.      Defendant Powelson and the Business Entity Defendants function as a single employer (also known as the integrated enterprise theory) by virtue of their interrelated operations, common management, centralized control of labor relations, common ownership and common financial control.

26.      Alternatively, Defendant Powelson and each of the Business Entity Defendants were joint employers of Reed. Under the joint employer theory, multiple entities can be liable as a joint employer if the entities share or co-determine the essential terms and conditions of the employee's job.

## IV.  GENERAL ALLEGATIONS

27.      Reed was fifty-nine (59) years old when she began her employment with Power World on or about September 30, 2008 as a Sales Representative. Throughout her employment, she also performed some work for the Business Entity Defendants.

28.      Immediately after Ms. Reed began working at Power World, General Manager Jon Haines and Sales Manager Clint Bobo began to sexually harass her. In fact, both Haines and Bobo sexually harassed Ms. Reed relentlessly throughout her time there—both verbally and physically. For example, Haines would press his body against Ms. Reed's breasts and ask her how much she paid for them. Haines also grabbed Ms. Reed's buttocks on at least two (2) different occasions. Whenever Haines and Bobo saw that Ms. Reed was clearly not happy about their harassment, they would tease her by telling her that she was "naïve" and calling her a "prude."

29.     Haines and Bobo also sexually harassed Ms. Reed regularly in the middle of sales team meetings, at which Ms. Reed, Haines, Bobo, Sales Representative Tina Holland, and sometimes Finance and Insurance Manager Barbara Webb, were all present.

30.     During one meeting, Haines and Bobo were sending text messages back and forth to each other during the meeting in their cell phones and chuckling incessantly about the content of their messages. Haines then said to Bobo, in front of Mses. Reed and Holland, "*She [referring to Ms. Reed] doesn't seem to like sex or any of our comments. But maybe she'd enjoy a dirty Sanchez.*"[2] Haines then turned directly to Ms. Reed and said, "Yeah, maybe I should give her a dirty Sanchez." When it became clear that Ms. Reed did not know what a "dirty Sanchez" was, they told her to go home and ask her son. Seeing that he was not getting the reaction he wanted from Ms. Reed, Haines then said, "*No, maybe she doesn't like that idea. How about a golden shower?*"[3] Ms. Reed immediately spoke up and told Haines and Bobo to stop objectifying her. In response, Haines and Bobo just laughed.

31.     Ms. Reed regularly spoke out against Haines's harassment of her during her time at Power World. Each time Haines harassed or abused her, Ms. Reed would tell him directly not to treat her like that. In response, Haines told Ms. Reed, "If you don't like it, you know what you can do." Haines was fully aware that his conduct was out of line, but he continued to harass female employees with impunity. On numerous occasions, Haines approached Ms. Reed and told her that Haines knew his conduct upset her but he couldn't help it because he was unable to control his impulses. Haines repeatedly told Ms. Reed that he was a "man's man" and he was

---

[2] "Dirty Sanchez" is a slang term that refers to the act of a person engaging in anal penetration with another person and then rubbing fecal matter resulting from the penetration on the other person's lips so that the fecal matter stays on the person's upper lip and forms a fecal moustache. *See* http://www.urbandictionary.com.

[3] "Golden shower" is a slang term that refers to a person urinating on another person for the purpose of sexual gratification and/or humiliation. See id.

"proud of it." Ms. Reed soon realized that her attempts to confront Haines directly were only making the harassment worse. In fact, it seemed as if Haines thrived on her obvious discomfort.

32.     In addition to the harassment Haines and Bobo directed at Ms. Reed, they also regularly committed heinous acts against other women at Power World in Ms. Reed's presence. Haines constantly made crude jokes and comments in Ms. Reed's presence about his sexual fantasies and about the things he wanted to do to various female employees. Haines also made graphic sexual comments about female job applicants when they came into the store. Haines regularly told numerous female employees that they were "hot," made various sexual gestures toward them, *and forcibly rubbed up against their bodies*.

33.     During sales meetings, Haines and Bobo would often discuss their penis sizes and their bowel movements. Bobo once called himself an "*African elephant*" in reference to his penis size. Haines also regularly talked about cocaine and prostitutes in the middle of these meetings. During another sales team meeting, Haines said to Ms. Holland, "*Wouldn't it be cool if you had temporary paralysis and I could do anything to your body*?"

34.     Even Haines' own wife was not safe from his outrageous comments. Shortly after Ms. Reed started working at Power World, Haines hired his wife to work under him as a bookkeeper. On November 11, 2008 when Haines' wife walked into a sales team meeting, Haines sexually harassed and humiliated her in front of Ms. Reed, Ms. Holland, and Bobo by grabbing his wife and making humping motions against her with his pelvis as he shouted, "*I have a big bonus for you, baby—a really big one—if you know what I mean*."

35.     Haines and Bobo also committed numerous acts of sexual harassment against other female employees of which Ms. Reed was aware. Haines also told female employee

Morgan Gates that he want to "*f- her*." On one occasion, Haines physically searched Ms. Webb in the parking lot as she was walking to her car. Haines also said to Ms. Gates about her and female employee Stephanie Stephanie, "*I shouldn't be married because there is so much hot ass in Grand County, and you and Stephanie are the hottest of them all*." Haines also threatened Ms. Stephanie if she would not "put out." *Haines also touched Ms. Stephanie, tried to kiss her, and chased her* until she had to lock herself in a room to get away from him. On another occasion, *Haines forcibly stuck his tongue down Ms. Stephanie's throat. Bobo also asked Ms. Stephanie repeatedly when they could go out back and "get it on*."

36.    Haines' harassment toward female employees was more than just sexual. He also created a hostile work environment for them generally because they were women. He would often verbally abuse female employees by yelling at them and pounding his fists on the desk or table in front of him. He also said things to female employees like, "*Women have their place and should stay there*." Haines did not behave this way toward male employees.

37.    In addition to his shameless sexual harassment and sex discrimination, Haines also harassed Ms. Reed on the basis of her age. Haines would tell Ms. Reed that she was his "*Mrs. Robinson fantasy*."[4] He also told her that "*old sales people are stuck in their ways*."

38.    Powelson was well aware of Haines' relentless harassment and discrimination against female employees at Power World, even before Ms. Reed began working there. *After all, numerous female employees had already complained in the past about Haines's sexual harassment of them.* Further, Haines made it no secret to employees that he had a criminal past involving domestic violence, alcohol, and drug charges, as well as the fact that he had been

---

[4] Mrs. Robinson is the name of the main female character in "The Graduate," which is both a novel and a movie in which a young man has a torrid sexual affair with a much older woman. See http://www.wikipedia.org.

terminated from his previous job at Sun West in Arizona and classified as "not re-hireable." Despite Powelson's awareness of the problem, he took no action in response to those complaints and allowed Haines' misconduct to continue unabated.

39.    Ms. Reed confided in Accountant Lyn Hull and Rental Manager Joel Brownson about Haines's sexual harassment of her and other female employees, but they did not know how to stop Haines's behavior. Ms. Reed also tried to complain—along with several others, including Ms. Holland, Ms. Webb, and employees Nick Peterson, Paul Arguine, and Penny Hoffert—to Power World owner Dave Powelson about the harassment, but he refused to listen to their complaints. Because there was no one else Ms. Reed could complain to at Power World, she was powerless to stop the harassment and abuse.

40.    On November 24, 2008, Powelson promoted Ms. Hull to Human Resources, thereby creating a brand new Human Resources Department for the first time at Power World. Upon information and belief, Powelson made this decision because of all of the complaints he had been receiving from employees about Haines's sexual harassment of numerous female employees, and he did not want to deal with those complaints. Specifically, *Powelson said that he did not want to hear from employees because it was not his problem.*

41.    On November 25, 2008, *the very next day after Power World created a Human Resources Department*, Ms. Reed, Ms. Webb, Ms. Holland, and Ms. Gates all submitted written complaints to Ms. Hull regarding Haines' sexual harassment of them. Ms. Hull took written notes of her meetings with the four (4) complainants. On December 2, 2008, Ms. Hull commenced an investigation into their allegations. Later that same day, Powelson marched into

the store and angrily announced to Ms. Reed, "*This ridiculous rigmarole will be over by December 4th*."

42.     As a part of her investigation, Ms. Hull completed and submitted a lengthy report to Powelson about the allegations against Haines. In her report, Ms. Hull concluded that Haines was guilty of sexual harassment. Ms. Hull's report also documented the statements of multiple employees who directly witnessed Haines' sexual harassment of numerous female employees.

43.     Shortly after Ms. Hull submitted her report to Powelson, Powelson confronted Haines about the harassment, at which point *Haines admitted in writing to inappropriately touching female employees, making crude sexual innuendos and comments to female employees, and engaging in age discrimination*. Based on these admissions, Ms. Hull completed a follow-up report.

44.     On December 4, 2008, the day Ms. Hull concluded her investigation into Haines' workplace misconduct, Ms. Reed met with Powelson, Brownson, and Ms. Hull. During the meeting, Ms. Hull showed Ms. Reed a copy of her follow-up report, which contained Haines admissions. Powelson then told Ms. Reed that *while Haines admitted to harassing the women, he deserved a second chance because he was over forty (40). Powelson then stated that he was very embarrassed that Mses. Reed, Webb, and Holland had to work in this kind of environment and that they were "free to leave." Powelson then stated that they were welcome to finish out the day but that they were "done" and could pack their things and leave.* Ms. Reed understood that Powelson was terminating her employment. *Powelson never provided Ms. Reed with any reason or explanation for her termination—nor did anyone else at Power World.*

45.     Powelson, Brownson, and Ms. Hull also held identical meetings with Mses. Webb and Holland on the same day. By the end of the day, they had terminated Mses. Reed, Webb, and Holland—the same three (3) women who had submitted written and signed complaints of sexual harassment just nine (9) days earlier—all without reason or explanation. No one else was terminated that day.

46.     Reed was satisfactorily performing her job duties at the time of her termination.

47.     Shortly thereafter, Powelson demoted Ms. Hull to a bookkeeping position. Unable to tolerate the retaliation against her, Ms. Hull was forced to constructively discharge from her employment with Power World. Unfortunately for the rest of the female employees at Power World, Haines and Bobo's egregious behavior continued long after Respondent terminated Mses. Reed, Webb, and Holland.

48.     Even worse, Respondent has gone to great lengths since the retaliation against Ms. Reed and others to conceal its misconduct. Upon information and belief, Powelson offered male employees at Power World, including Mr. Nick Peterson, who accepted the offer, a ten (10) percent ownership interest in the business if they refused to provide information in this case.

49.     Additionally, Defendant  Powelson has deliberately re-hired numerous female employees who also suffered from sexual harassment in exchange for their refusal to provide information in this case. Haines even succeeded in getting Ms. Holland to write a recent statement rescinding her original complaint of sexual harassment. This occurred immediately after the EEOC contacted opposing counsel and Defendants  began preparing the Position Statement. During that same time, Haines *told Ms. Holland that if she wanted to keep her job, she would write the statement*.

11

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
VIOLATION OF TITLE VII AGAINST BUSINESS ENTITY DEFENDANTS
(Gender Discrimination/Hostile Work Environment in Violation of Title VII)

50.     Plaintiff incorporates paragraphs 1 through 49 of this Complaint and Jury Demand as if fully set forth herein.

51.     Plaintiff belongs to a protected group by virtue of her sex, female.

52.     Plaintiff was performing her job satisfactorily at the time of Defendants' discriminatory conduct.

53.     As set forth above, Plaintiff was treated less favorably than her male counterparts and discriminated against on the basis of her sex.

54.     As set forth above, Plaintiff was also subjected to a hostile work environment.

55.     By the aforesaid acts of gender discrimination and disparate treatment, and by subjecting Plaintiff to a hostile work environment, Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

56.     109. As a result of these discriminatory and unlawful actions, Plaintiff has suffered and continues to suffer damages, including both economic and non-economic losses.

### SECOND CLAIM FOR RELIEF
VIOLATION OF TITLE VII AGAINST BUSINESS ENTITY DEFENDANTS
(Sexual Harassment in Violation of Title VII)

114. Plaintiff incorporates paragraphs 1 through 56 of this Complaint and Jury Demand as if fully set forth herein.

57.     Plaintiff belongs to a protected group by virtue of her sex, female.

58.     Plaintiff was performing her job satisfactorily at the time of the unlawful conduct.

59.     As outlined above, Plaintiff was subjected to sexual harassment.

60.     By the aforesaid acts of sexual harassment, Power World violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

61.     As a result of these discriminatory and unlawful actions, Plaintiff has suffered and continues to suffer damages, including both economic and non-economic losses.

### THIRD CLAIM FOR RELIEF
VIOLATION OF TITLE VII AGAINST BUSINESS ENTITY DEFENDANTS
(Unlawful Retaliation in Violation of Title VII)

62.     Plaintiff incorporates paragraphs 1 through 61 of this Complaint and Jury Demand as if fully set forth herein.

63.     Plaintiff belongs to a protected group by virtue of her sex, female.

64.     Plaintiff was performing her job satisfactorily at the time of the unlawful retaliation.

65.     As outlined above, Plaintiff was retaliated against in 2008 for complaining of sex discrimination, sex harassment, and a hostile work environment by virtue of her termination.

66.     By the aforesaid acts of retaliation, the Business Entity Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

67.     As a result of these retaliatory and unlawful actions, Plaintiff has suffered and continues to suffer damages, including both economic and non-economic losses.

## FOURTH CLAIM FOR RELIEF
VIOLATION OF ADEA AGAINST BUSINESS ENTITY DEFENDANTS
(Disparate Treatment in Violation of the ADEA)
(Hostile Work Environment in Violation of the ADEA)
(Unlawful Termination in Violation of the ADEA)
(Retaliation in Violation of the ADEA

68.     Plaintiff incorporates paragraphs 1 through 67 of this Complaint and Jury

Demand as if fully set forth herein.

69.     Plaintiff belongs to a protected group by virtue of her age, age fifty-nine (59) at

the time of her termination.

70.     At all relevant times, Plaintiff was an "employee" within the meaning of § 11(f)

of the ADEA, 29 U.S.C. § 630(f) and was well over age forty (40) years, and as such, was a

member of the age group protected by the ADEA, pursuant to § 12 of the ADEA, 29 U.S.C. §

631(a).

71.     Plaintiff had been performing her job satisfactorily when Defendants terminated

her without explanation.

72.     As outlined above, and incorporated herein, Plaintiff was treated less favorably

as compared to her younger counterparts.

73.     The Business Entity Defendants' discriminatory actions subjected Plaintiff to a

hostile work environment.

74.     Plaintiff's age was a "but for cause" of the hostile work environment, disparate

treatment, retaliation and the abrupt termination to which the Business Entity Defendants

subjected her.

75.     As outlined in more detail above, the Business Entity Defendants purposefully

and willfully discriminated against Reed based on her age, in violation of the ADEA.

76.    As outlined in more detail above, the Business Entity Defendants retaliated against Reed by terminating her after she complained about age discrimination.

77.    As a result of the Defendant's above-described discriminatory actions, Reed has suffered and will continue to suffer damages, including significant economic loss.

### FIFTH CLAIM FOR RELIEF
SEX PLUS AGE DISCRIMINATION AGAINST ALL BUSINESS ENTITY DEFENDANTS
(Disparate Treatment of Older Females in Violation of Title VII and the ADEA)
(Hostile Work Environment in Violation of Title VII and the ADEA)
(Retaliation in Violation of Title VII and the ADEA)

78.    Plaintiff incorporates paragraphs 1 through 77 of this Complaint and Jury Demand as if fully set forth herein.

79.    Reed is a member of a discrete subclass of women, women over age 40. Age and gender are immutable characteristics.

80.    Reed had been performing her job satisfactorily at the time of her abrupt termination.

81.    As outlined above and incorporated herein, Reed was treated less favorably as compared to her younger male counterparts.

82.    As outlined in more detail above, Defendants discriminated against Reed based on her age and sex.

83.    As outlined in more detail above, the Business Entity Defendants retaliated against Reed by terminating her after she complained about sex and age discrimination.

84.    As a result of the Defendants' above-described discriminatory and retaliatory actions, Reed has suffered and continues to suffer damages, including significant economic loss and noneconomic loss.

**SIXTH CLAIM FOR RELIEF**
(Intentional Infliction of Emotional Distress Against All Defendants )

85.    Plaintiff incorporates paragraphs 1 through 84 of this Complaint and Jury Demand as if fully set forth herein.

86.    Powelson engaged in extreme and outrageous conduct when he deliberately commandeered and altered the results and findings of Lynn Hull's investigation into the sexual harassment allegations by Ms. Reed and numerous other employees.  Powelson then engaged in further outrageous conduct when he terminated Ms. Reed and the other female employees who complained about sexual harassment—in the very same meeting—indeed, in the very same breath, as his acknowledgement to them that Haines had sexually harassed them—and had even admitted to doing so.

87.    Powelson clearly did this as a deliberate and ruthless act of retaliation against Ms. Reed and the other female employees for complaining about sexual harassment.

88.    Powelson's retaliatory terminations went well beyond the egregiousness of most retaliatory terminations—and well beyond the bounds of decency.

89.    Each of the Business Entity Defendants, operating as a single employer or a joint employer, ratified and approved of Defendant Powelson's illegal treatment of Plaintiff.

90.    The above-referenced conduct, along with the other acts of discrimination, harassment and retaliation outlined in this Complaint, was intended to cause severe emotional distress to Plaintiff or was engaged in with reckless disregard that said conduct would cause such severe emotional distress.

91.    The Plaintiff was in fact, damaged by such conduct, including suffering severe emotional distress and physical illness.

## SEVENTH CLAIM FOR RELIEF
(Negligent Infliction of Emotional Distress Against All Defendants)

92.     Plaintiff incorporates paragraphs 1 through 91 of this Complaint and Jury Demand as if fully set forth herein.

93.     Powelson was negligent.

94.     Powelson's negligence created an unreasonable risk of physical harm to Reed.

95.     Powelson's negligence caused Reed to be put in fear for her own safety and such fear was shown by physical consequences or long continued emotional disturbance, rather than only momentary fright, shock, or other similar and immediate emotional distress

96.     Reed's fear caused her injuries, damages, consequential damages and losses.

97.     Month after month, Powelson negligently allowed Haines and Clint Bobo to continue committing egregious acts of sexual harassment against Reed and numerous other female employees. In spite of their repeated complaints and cries for help to Powelson, he refused to take any action to stop the harassment they endured. Plaintiff Reed not only endured repeated acts of sexual harassment, including physical assaults, but she also witnessed and learned about numerous acts of egregious sexual harassment toward other employees at Power World.

98.     Each of the Business Entity Defendants, operating as a single employer or a joint employer, ratified and approved of Defendant Powelson's illegal treatment of Plaintiff.

99.     As a consequence of Powelson's multiple acts of misconduct toward Plaintiff as well as her witnessing the mistreatment of other female employees, Reed suffered both mentally and physically from the constant fear and danger she faced at Power World, all of which she continues to struggle with.

**EIGHTH CLAIM FOR RELIEF**
(Intentional Interference With Contract Against Defendant Powelson)

100.    Plaintiff incorporates paragraphs 1 through 99 of this Complaint and Jury Demand as if fully set forth herein.

101.    The plaintiff had a continuing employment relationship contract with Power World.

102.    Defendant  Powelson knew or reasonably should have known of the contract between Reed and Power World.

103.    Defendant Powelson was a third party with respect to the continuing employment relationship contract between Reed and Power World.

104.    Defendant  Powelson by words or conduct, or both, intentionally caused Power World to terminate its contract with Reed.

105.    Defendant Powelson's interference with the contract was improper.

106.    Powelson terminated Ms. Reed's employment for the purpose of interfering with her at-will employment contract with Power World.  This is particularly true because Powelson, as a company executive, terminated Ms. Reed's employment in retaliation for her filing of a complaint or otherwise attempting to pursue legal action against the company.

107.    Defendant  Powelson's interference with the contract caused Reed damages and losses.

**NINTH CLAIM FOR RELIEF**
(Wrongful Discharge in Violation of Public Policy Against All Defendants)

108.    Plaintiff incorporates paragraphs 1 through 107 of this Complaint and Jury Demand as if fully set forth herein.

109.    Defendant Power World, through Defendant Powelson, discharged Reed from her employment in retaliation for refusing to engage in unlawful or unethical conduct; exercising a job-related right or privilege; and/or engaging in conduct that was protected or encouraged as a matter of public policy.

110.    In so doing, Defendants undermined clearly expressed public policies, set forth in C.R.S. § 24-34-402 and/or C.R.S. § 18-3-204, to be free from sexual harassment and/or sexual assault in the workplace.

111.    The policies set forth in C.R.S. § 24-34-402 and/or C.R.S. § 18-3-204 truly impact the public.

**TENTH CLAIM FOR RELIEF**
(Negligent Hiring, Supervision and Retention Against All Defendants)

112.    Plaintiff incorporates paragraphs 1 through 111 of this Complaint and Jury Demand as if fully set forth herein.

113.    There was an employment or agency relationship between Reed, Power World and Powelson.

114.    Defendants  Power World and Powelson breached the duty owed to Reed by virtue of that employment relationship.

115.    The breach of that duty caused harm to Reed.

116.    When Defendant Powelson hired Haines to work closely with the public, customers and employees, Haines already had a documented history of violence and that he came across as threatening to anyone who met him.

117.    It was also common knowledge at Power World that Haines committed acts of domestic violence against his wife, had a criminal record, regularly engaged in criminal activity, and departed from his previous management position in Arizona under suspicious circumstances.

118.    Moreover, numerous female Power World employees had complained directly to Powelson about Haines' sexual harassment almost immediately after Haines began working at Power World.

119.    Despite Powelson's undisputed knowledge of Haines' illegal sexual harassment, he did not terminate Haines until some time in 2009—for reasons unrelated to the harassment.

120.    Thus, Defendant  Powelson knew or should have known that the Haines' conduct would subject other employees, including Reed, to an unreasonable risk of harm.

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**WHEREFORE**, Plaintiff respectfully moves this court and prays for:

(a) a declaratory judgment declaring that the Defendants have violated the above described statutes by the aforesaid acts against Plaintiff;

(b) all compensation, back pay, equal pay, front pay and benefits that Plaintiff was denied because of the Defendants' acts, in a sum to be determined by the court and jury;

(c) liquidated and compensatory damages, including for future pecuniary losses, physical/medical injury and harm, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, in a sum to be determined by the court and jury;

(d) exemplary or punitive damages in a sum to be determined by the court and jury;

(e) legal fees, disbursements, expert fees, and costs of this action;

(f) all legal interest on sums awarded;

(g) all issues so triable to be decided by a jury;

(h) such other relief as the court may deem appropriate.

DATED this 2nd day of December, 2010.

Respectfully submitted,

KING & GREISEN, LLP


By:s/Diane S. King
    Diane S. King
    Laura E. Schwartz
    1670 York Street
    Denver, Colorado 80206
    (303) 298-9878
    (303) 298-9879 (fax)

Attorneys for Plaintiffs

Plaintiff's  Address:

Mikeleen Reed
15201 Aquarius Street
Corpus Christi, TX  78418